IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
IN ADMIRALTY

THOSE  UNDERWRITERS
AT INTEREST SUBSCRIBING TO POLICY
NUMBER B0901LC1920486000 a/s/o
PLAZA PROVISION COMPANY, INC.  and as
reinsurer of UNIVERSAL INSURANCE COMPANY

           Plaintiff,                         CASE NO.:

vs.

TOTE MARITIME PUERTO RICO LLC,
and AQUA GULF TRANSPORT, INC.

           Defendants.

_____/

## COMPLAINT

Plaintiff,  THOSE  UNDERWRITERS AT INTEREST SUBSCRIBING TO POLICY NUMBER B0901LC1920486000 a/s/o PLAZA PROVISION COMPANY and as reinsurer of UNIVERSAL INSURANCE CO., INC. by and through the undersigned counsel, sues the Defendants  TOTE MARITIME PUERTO RICO LLC and AQUA GULF TRANSPORT, INC. and alleges  as follows:

### JURISDICTION AND VENUE

1.    These causes of action arise under the Admiralty and Maritime Laws of the United States and are brought pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and applicable Supplemental Rules for Admiralty or Maritime Claims.

2.    This is a cargo recovery action that seeks to recover for the loss of two shipments of goods pursuant to the provisions of the Carriage of Goods by Sea Act, 46 USC Sec. 30701, Sec.

13  (COGSA).

3.    Upon information and belief, venue is proper in this district because a substantial part of the offense and or omission giving rise to this claim occurred within this district and because the contract of TOTE MARITIME PUERTO RICO, LLC (hereinafter TOTE) requires venue in this district.

4.    This Court has jurisdiction over the defendants because the defendants were at all times corporate entities authorized to and transacting business within the state  of Florida and conducted business in Jacksonville, Duval County, Florida.

<u>THE PARTIES</u>

5.    At all times relevant hereto the Plaintiff was and is a group of foreign insurance companies with principal offices located in London, England who issued a policy  of insurance covering PLAZA PROVISION COMPANY and providing reinsurance to UNIVERSAL INSURANCE CO., INC.  pursuant to the above captioned policy number and brings this action in their name in subrogation having  made payment to the insured on account of the claims asserted in this action.

6. The Defendant, TOTE is a limited liability company that is organized and existing under the laws of Delaware and has a principal place of business located at 10550 Deerwood Park Blvd., Jacksonville, Florida 33259.

7.    TOTE is a common carrier of cargo by water for hire and was the ocean carrier of the subject cargo shipment herein below described specifically providing services and refrigerated containers into which the subject goods were packed.

8. Defendant   AQUA GULF TRANSPORT, INC. (hereinafter AQUA GULF) is a corporation organized and existing under the laws of the United States and has a principal place

of business at 1301 West Newport Center Drive, Deerfield Beach, Florid 33442.

9. AQUA GULF is a logistics provider and also a non-vessel operating common carrier for cargo owners shipping cargo from Jacksonville, Florida to San Juan, Puerto Rico who contracted with TOTE as the Shipper, to transport the cargos that are the subject of this action.

10. In this case, Defendant AQUA GULF contracted with PLAZA PROVISIONS COMPANY to transport cargo from Jacksonville, Florida to San Juan, Puerto Rico and as shipper AQUA GULF, contracted Defendant TOTE for the ocean carriage of cargo in TOTE refrigerated containers.

11. The terms of the TOTE MARITIME of lading require that lawsuits be filed exclusively in the U.S. Federal District Courts.

12. At all times relevant hereto the defendant TOTE MARITIME holds itself out to "specialize in shipping temperature-controlled cargo across the sea using our best in class technology" and as "the best in the business for handling your refrigerated cargo.

13. At all times relevant hereto the defendant TOTE MARITIME holds itself as providing "24/7, real-time complete monitoring of all your reefers whether they are on the road, dock or aboard our vessels." (See Exhibit 1)

14. The Court has jurisdiction in this matter in that this case arise under the admiralty and maritime jurisdiction of the Court within the meaning of Federal Rule of Civil Procedure 9(h) in that this action arising under the CARRIAGE OF GOODS BY     SEA ACT of THE UNITED STATES as set forth in 46 USC §§1300 et seq. and also under 28 U.S.C. § 1331.

## COUNT I-SHIPMENT 1

15. Plaintiff hereby incorporates paragraphs 1-14 above the same as if each was more fully and completely set forth herein verbatim.

3

16.  On or about March 15, 2019, PLAZA PROVISION COMPANY acting through AQUA GULF contracted with AQUA GULF  for it to arrange for the  transport of two shipments of perishable meats from Jacksonville, Florida to San Juan, Puerto Rico.

17.  As  a result, AQUA GULF as shipper, entered into a Bill of Lading bearing number SSL000644257 (Exhibit 2)  dated March 15,  2019, issued by TOTE to cover the transport of 4,539 packages of meat products to be transported from Jacksonville to the consignee PLAZA PROVISION COMPANY in San Juan, Puerto Rico.

18.  The packages were loaded into TOTE's container STRU5823425 in excellent condition.

19.  The Bill of Lading issued by TOTE  included the instruction and requirement to it to "MAINTAIN TEMP AT 34 DEGREES FAHRENEIT".

20.  TOTE affixed a label to the container on March 12, 2019, which shows that the temperature was required to be maintained at 34 degrees.

21.  Upon information and belief the shipment sailed aboard the  vessel called the ISLA BELLA on or about March  15th, 2019.

22.  Upon arrival of the container in Puerto Rico on March 18, 2109  it was discovered, when the container was opened,  that the contents of the container and the condition of the product was not fit for consumption because the temperature had not been maintained during transport in accordance with the requirements and instructions.

23.  Upon inspection, it was discovered that TOTE did not maintain the temperature of the container as it was required to, and TOTE would not produce any records to show that it maintained and monitored the temperature for  the container during transit.

24.  When TOTE did inspect the container, it confirmed that the temperature ranged from 49.4 degrees  no later than March 18th at 00:46 AM to 58.8 at 9:46 PM  on 3/19.

25. Thus, there is no dispute but that the perishable freight was exposed to unsafe temperatures for a period of at least 45 hours rendering it unfit for human consumption.

26. As a result, after inspection, the cargo had to be discarded resulting in a loss of $103,909.61, which sum was subject to the insured's deductible of $25,000 resulting in a net payment to the insured of $78,909.61

27. Plaintiffs seek to recover the insured's deductible as well as the amount paid pursuant to its policy of insurance.

28. Although requested, it was discovered that TOTE did not maintain the temperature of the container during transport as it was required to.

29. TOTE would not produce any records to show that it maintained the containers and/or that it properly monitored the temperature of the container during transit rendering TOTE fully liable for the loss.

30. Further, TOTE rejected the claim presented to it, via AQUA GULF and insisted that the insured must first seek payment from its own insurer which Plaza Provision did do and as a result, the Plaintiff's in this case, made payment to the insured who made payment to the insured per its reassured insurer in the amount of $78,909. (Exhibit 3)

## COUNT II- SHIPMENT 2

31. Plaintiff hereby incorporates paragraphs 1-14 above the same as if each was more fully and completely set forth herein verbatim.

30. The second shipment consisted of 5,072 packages of meats and or other goods was also to be transported from Jacksonville, Florida to San Juan, Puerto Rico under Bill of Lading SSL000646305 which was set to sail on March 22, 2019 and arrive on March 25, 2019. (See Exhibit 4)

31.  The Bill of Lading included the requirement to the carrier to "MAINTAIN TEMP AT 34 DEG FH".

32.  The product was delivered to TOTE in excellent condition in one of its refrigerated containers and  sailed aboard the vessel called the ISLA BELLA.

33.  Upon arrival of the container after March 18, 2019 and opening the container it was discovered that the condition of the product was unfit for consumption and  that its temperature had not been monitored nor maintained during transport in accordance with the requirements and instruction just as in the case of the first shipment.

34.  Upon inspection, it was discovered that TOTE did not maintain the temperature of the container as  was required and TOTE would not produce any records to show its maintained, monitored and observed the temperature  of and the readings for the container during transit.

35.  When TOTE send surveyors to inspect, they admitted that since it's sailing date,  the reefer did not maintain its temperature reaching 52 degrees on March 25, 2019 at 11:14 AM.

36.  When the container was delivered on March 26th- the temperature showed  51 degrees and  was recorded to have an inside temperatures of 58 degrees.

37.  As a result, after inspection, the cargo had to be discarded resulting in a loss of  the merchandise which had a value of $104,730.94.  Payment of the claim was subject to the insured's $25,000 deductible interest resulting in a net payment of $79,730.94. (Exhibit 5)

38.  As a result of said payment, plaintiff have become subrogated to the rights to pursue recovery from Defendants who are liable for this loss.

39.  All conditions precedent to the filing of this action have occurred or have been waived.

40.  Defendants breached their obligations to  deliver the  merchandise to the consignee at destination in the same good order and condition as they were in when they were received by

them and the defective nature of the container was or should have been known to the Defendant.

## COUNT III – AS TO AQUA GULF

41.  Plaintiff hereby incorporates paragraphs 1-14 above the same as if each was more fully and completely set forth herein verbatim.

42.  In March 2019, Plaintiff's insured, PLAZA PROVISION COMPANY, INC.,  purchased a large quantity of meat products packaged in boxes for delivery via refrigerated containers from Jacksonville, Florida to San Juan Puerto Rico.

43.  A contract of carriage was entered into between PLAZA PROVISION and AQUA GULF whereby AQUA GULF agreed to either transport the cargo to PUERTO RICO and/or to contract with TOTE for the transport and delivery of the products to be contained in refrigerated containers at specific chilled temperatures.

44.  AQUA GULF entered into the two bills of lading for the transport of the two TOTE owned refrigerated containers holding thousand of boxes of meat products.  (The bills of lading are attached to the complaint as Exhibits 2 and 4)   and are incorporated herein.

45.  Although the products were delivered to AQUA GULF and/or to TOTE in good condition, upon arrival, both shipments were unfit for consumption and had to be discarded.

46.  Demand for payment was made to Defendants but they declined to make payment and as a result, Plaintiff's insured submitted a claim to its insurer UNIVERSAL who was itself reinsured by Plaintiff, and it was Plaintiff who made both payments to their  insured for both claims whose damages totaled $211,548.46.

47.  Defendant AQUA GULF is liable to indemnify Plaintiff for these claims by reason of it having loaded the products into defective containers and/or selecting an ocean carrier that was not or did not adhere to the temperature requirements for safe shipment and who refuses to

indemnify Plaintiff for these claims.

48. AQUA GULF is liable for the losses and obligated to indemnify Plaintiff because AQUA GULF accepted the products for transport, bound itself to maintain the temperature of the shipments as required during transport and arranged for TOTE to transport the shipment safely and as required but TOTE failed to do so.

49. AQUA GULF is therefore itself liable to indemnify Plaintiff for the loss of the cargo that was entrusted to it for safe delivery to San Juan, Puerto Rico in the amount of $211,548.46.

**WHEREFORE**, plaintiff demands judgment of the defendants, either jointly or severally, in the sum of $ 211,548.46, together with pre and post judgment interest and costs and expenses and if entitled, to an attorney fees, and for such other relief as otherwise permitted by the Court.

Dated: This 11th day of March 2020 at
Boca Raton, Florida

Respectfully,

Shadowitz Associates, P.A.
Attorneys for Plaintiffs
7777 Glades Rd., Suite 100
Boca Raton, FL 33434
Tel: 561-241-6740 Fax: 561-241-6741

By: s/Mitchell L. Shadowitz
     MITCHELL L. SHADOWITZ

EXHIBIT "1"

# TOTE Maritime Puerto Rico Shipping

## REFRIGERATED CARGO: COOLCONNECT AND NATURALINE®

### Monitoring Your Cargo, Every Step of the Way

TOTE Maritime specializes in shipping temperature-controlled cargo across the sea using our best in class technology which includes NaturaLINE® and CoolConnect. Our smart refrigerated containers (reefers) and longstanding expertise in handling both fresh and frozen cargo, makes us the best in the business for handling your refrigerated goods.

Carrier's NaturaLINE unit, which uses natural refrigerant $CO_2$, can reduce carbon dioxide emissions by up to 28 percent compared to previous units using synthetic refrigerant, limiting its impact on the environment. At the same time, CoolConnect provides complete visibility of your shipment making shipping refrigerated goods even more convenient and predictable for you.

## PR QUICK LINKS

- Customer Portal
- Track Shipment
- Quote Today!
- Caribbean Sailing Schedule
- Puerto Rico Sailing Schedule
- Terminal Locations



Our food-grade reefers are part of our commitment to move your refrigerated temperature-sensitive cargo safely and expediently, from farm to table.

As the youngest reefer fleet in the trade to be shipping temperature-sensitive cargo to Puerto Rico, this technology provides huge benefits to our customers. The combination of NaturaLINE and CoolConnect for our reefers give customers peace-of-mind when relying on this technology to get their cargo transported at their desired temperature from point of origin to destination.

## Innovation that Delivers

TOTE Maritime is the first in the Puerto Rico trade to utilize NaturaLINE in our reefer fleet. This technology is a reflection of our commitment providing our customers best in class technology while also caring for the environment.

Also an industry first, CoolConnect provides 24/7, real-time complete monitoring of all your reefers whether they are on the road, dock or aboard our vessels. Telematic technology within our reefers provide our experts with temperatures and other critical data that allow us to manage and deliver your time-sensitive cargo with maximum precision at an accelerated rate.

## Focused on Safety

CoolConnect provides seamless visibility and control with the ability to receive critical data from containers while they are on the vessel or on shore.

This connectivity and visibility enhances crew efficiency and safety by eliminating the need to manually check the temperature status and condition of traditional reefers.

## NaturaLINE and CoolConnect provide

- 100% Equipment Coverage
- 24/7 Monitoring by TOTE Maritime
- Most Experienced Team in the Trade
- Full Complement of Reporting Capabilities
- Spoilage Prevention
- Reduction of Airfreight Shipments
- Theft Deterrence

| Reefer Container Type | Inside Dimensions | | | Door Openings | | Cubic Capacity |
|---|---|---|---|---|---|---|
| | L | W | H | W | H | |
| 40' Reefer | 37'11" | 7'6" | 8'4" | 7'6" | 8'5" | 2398 |
| 45' Reefer | 43'0" | 7'6" | 8'4" | 7'6" | 8'5" | 2714 |

## Testimonials

"Our farm-to-table takes about 4 days to complete. That is a very significant, accelerated supply chain that we are uniquely able to consistently deliver." - *Eduardo Pagan, VP and General Manager Caribbean Services*

"CoolConnect offers access to comprehensive, real-time information about our refrigerated containers that enables us to not only maximize the safety and efficiency of our supply chain operations, but to also better serve you." - *Jim Wagstaff, VP of Operations*

SAFETY.
COMMITMENT.
INTEGRITY.

At TOTE Maritime, shipping is about more than reliable delivery, it's about people. The TOTE Maritime team is dedicated to exceeding our clients' expectations with efficiency, integrity and unparalleled customer service. We're equally committed to our own employees – fostering a working environment where they are respected, inspired, and recognized for excellent work.



Perla Del C...

EXHIBIT "2"

# BILL OF LADING

**TOTE Maritime**

**TOTE Maritime Puerto Rico**

| | |
|---|---|
| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS & ZIP CODE):   REF #: 728127 | SCAC: TMGT |
| AQUA GULF TRANSPORT INC   728127 | BILL OF LADING NO.: SSL000644257 |
| 1301 W NEWPORT CENTER DR | SAIL DATE: 15-Mar-19 |
| DEERFIELD BEACH FL 33442 | EST. ARRIVAL DATE: 18-Mar-19 |
| UNITED STATES | BOOKING NO.: SSL000644257/7299272 |

| Field | Value |
|---|---|
| TAX BOND NO: | |
| FORWARDER REF #: | TAX STATUS: NOT RELEASED |
| | LOT NO: 668665 |
| FORWARDING AGENT:  FMC NO.: | CHB LIC NO: |

CONSIGNEE (COMPLETE NAME, ADDRESS, AND ZIP CODE):   REF #:
PLAZA PROVISION CO
CARR. 165 CORNER 28
GUAYNABO PR 00965
PUERTO RICO

NOTIFY PARTY(COMPLETE NAME, PHONE, FAX & EMAIL):   REF #:
OSCAR VARGAS
PLAZA PROVISION CO
CARR. 165 CORNER 28
GUAYNABO PR 00965
PUERTO RICO

Phone: +1 787-781-2070     Fax: +1 787-781-9750

FREIGHT PAYABLE BY:
AQUA GULF TRANSPORT INC
1301 W NEWPORT CENTER DR
DEERFIELD BEACH FL 33442
UNITED STATES

CITY, STATE, & COUNTRY OF ORIGIN:
Jacksonville, United States

| PRE-CARRIAGE BY: | PLACE OF RECEIPT: Jacksonville | TYPE OF MOVE: PORT TO PORT | ALSO NOTIFY(NAME,PHONE,FAX & EMAIL): |
|---|---|---|---|
| VESSEL: ISLA BELLA | PORT OF LOADING: JACKSONVILLE | PORT OF DISCHARGE: SAN JUAN | |
| VOYAGE:   FLAG: 5171S    UNITED STATES | | | TEL:   FAX: |
| VESSEL:   FLAG: | PORT OF LOADING: | PORT OF DISCHARGE: | DESTINATION: San Juan    PREPAID/COLLECT: Prepaid |
| VOYAGE: | | | |

PARTICULARS FURNISHED BY SHIPPER. CARRIER HAS NOT VERIFIED CONTENTS OR WEIGHT

| MARKS & NOS. CONTAINER/SEAL NO. | NO. OF PKGS | HZ | DESCRIPTION OF DOCUMENTS AND GOODS | GROSS WEIGHT LBS/KGS | MEASUREMENT CFT/CM |
|---|---|---|---|---|---|
| Ctnr. No    Seal STRU582342S  7773150 | 733 PCE 2488 PCE | | Type 40RF      34F LUNCHABLES HAMS AND CUTS THEREOF  OF SWINE NESOI PREPARED OR PRESERVED | 3254.52 LB 11046.72 LB | |
| | 209 PCE | | MAINTAIN TEMP AT 34 DEGREES FAHRENEIT SAUSAGES AND SIMILAR PRODUCTS OF MEAT OTHER THAN POULTRY | 927.96 LB | |
| | 1109 PCE | | BACON | 4923.96 LB | |
| ITN: X20190313412256 | | | | Express Bill of Lading | |

THESE COMMODITIES LICENSED BY U.S. FOR ULTIMATE DESTINATION. DIVERSION CONTRARY TO U.S. LAW PROHIBITED.

SHIPPER'S LOAD AND COUNT

| RECEIVED FOR SHIPMENT DATE: | LADEN ON BOARD DATE: 15-Mar-19 | NO. OF ORIGINAL BLS:  0 (ZERO) |
|---|---|---|
| TARIFF:    TLI NO.: | CHARGE TYPE:    QTY:   RATE BASIS:    RATE:   PREPAID CHARGES:   COLLECT CHARGES:    TOTAL CHARGES: | |

GRAND TOTAL:

Carrier's $500 limitation of liability per container shall apply, unless Carrier's tariff provides for Shipper's Interest cargo insurance with limits specified in Clauses 24 and 25 on the reverse side or Shipper selects Option (A) or (B) below.

A. Insurance Coverage -- See Clause 24 on the reverse side and applicable tariff to determine whether Shipper's cargo can be insured. If cargo can be insured, Shipper requests Shipper's Interest cargo insurance at the applicable rates covered by Carrier.
( ) Yes (X) No   Insured Value $_____

B. Ad Valorem -- See Clause 25 on the reverse side. If Shipper declares a value in the space provided and pays Carrier's Ad Valorem rate for Shipper's cargo, Carrier's $500 limitation per container will not apply.

Declared Value $_____

Received the goods or packages said to contain good s herein mentioned in apparent good order and condition, unless otherwise indicated, to be shipped as herein provided. Carrier has not inspected contents of said sealed packages.

The receipt, custody, carriage, delivery and transshipment of the goods are subject to the terms appearing on the face and back hereof, and Carrier's tariffs on file with the Surface Transportation Board and/or the Federal Maritime Commission, Washington, D.C.

In witness whereof, the Carrier or its agent has signed  0  original bill(s) of lading, all of the same tenor and date, one of which being accomplished, the others to stand void.

Signed on behalf of the Carrier, TOTE Maritime Puerto Rico, LLC

By:_____, Carrier

TOTE Maritime Puerto Rico, LLC, Bill of Lading Terms and Conditions are available for inspection at the office of Carrier and its agents and at www.totemaritime.com. Contact us at 1-877-775-7447 for answers to questions or further information. Carriage of Shipper's cargo is subject to all such Terms and Conditions, which are incorporated herein by reference.

EXHIBIT "3"

| Policy No. | **SWORN STATEMENT IN** | Exp. Date |
|---|---|---|
| **09-580-000592599-2** | **PROOF OF LOSS** | **02/27/2020** |

## UNIVERSAL INSURANCE COMPANY
BY YOUR POLICY OF INSURANCE ABOVE DESCRIBED, YOU INSURED
**Assured: PLAZA PROVISION COMPANY &/OR SEE EXTENDED NAME
Agency: CHRISTIANSEN INSURANCE**

Subject to the terms and conditions thereof, the following property located at **Road No. 1, Km. 27.9, Barrio Cañas in Caguas, Puerto Rico**. I (we) state that in addition to the sum insured by said policy on said property there was no other insurance made thereon except as follows:

Amount  **$2,000,000.00**          **UNIVERSAL INSURANCE CO. POLICY: 09-580-000592599-2**

**Cargo Damages** occurred between Union City, Georgia and San Juan, Puerto Rico through Jacksonville, Florida between March 14th and March 21st 2019. Which to the best of our knowledge and belief was possibly caused by a breakdown of the refrigeration unit that caused that the cargo suffered temperature's variations.

**DETAILED DESCRIPTION OF LOSS:  container STRU58234251 loaded with Oscar Mayer lunchables ham and turkey boxes**

The actual cash value of the property lost or damaged, the actual amount of loss and/or damage as shown by the statement of loss contained on back hereof, the total insurance at time of said loss and/or damage and the amount claimed under the said policy are as follows:

| Cash Value | Whole Loss And/or Damage | Whole Insurance | Amount Named in this Policy | Amount claim under this Policy |
|---|---|---|---|---|
| | $104,730.94 | $2,000,000.00 | $2,000,000.00 | $79,730.94 |

   (I)   We   hereby make claim upon the **Universal Insurance Company** in the sum of **$79,730.94** said loss and/or damage after **$25,000.00** deductible per occurrence. In consideration of whatever payment may be made hereunder   (I) We   hereby subrogate to the said Company all ____ its ____ right,  (s)  title and interest in and to the property for which claim is being made hereunder to the extent of such payment and **(I ) We** (I)  further agree that should the said property be recovered at any time to immediately notify the said Company and to refund to said Company in full any amount it may have advanced to me (us) on account of the said loss it being understood that the said Company is to pay the cost of restoring the said property to its condition at the time of loss if recovered in a damaged condition.

We  (I)  further state that at the time of said  loss belong exclusively to **Plaza Provision Company, Inc.** and no other person or persons had any interest therein and that there was no encumbrance of any kind whatsoever on said property. The said loss did not originate by any act, design or a procurement, nor in consequence or any fraud or a evil practice done or suffered by or on part of deponent or of anyone having any interest in the property insured, or in the said Policy, that nothing has been done by or with deponent's privities or consent to violate the conditions of the said Policy or render it void; and that no articles are mentioned herein but such as were lost, damage or destroyed, and belonging to, and in the possession of the said insured at the time of the said  insured at the tie of the said loss; that no property saved has been in any manner concealed and that no attempt to deceive the said Company as to the extent of said loss or otherwise, has in any manner been made. Any other information that may be required will be furnished on call and considered a portion of these proofs. It is further expressly understood and agreed, that the furnishing of this form of proof of loss to **Universal Insurance Company** or the preparation and/or acceptance of proof of loss by any adjuster or agent of the Company shall not be construed to be a waiver of any of the conditions of the policy or of the rights of the Company under the policy or otherwise.

Approved:

*Sign* _____          Claim #2082967
PERSONALLY APPEARED, _____
signer _____ of the foregoing statement, who made solemn oath to the truth of same, and that no material fact is withheld that the said Company should be advised of. WITNESS my hand and official seal this ____ day of _____ of 2016

_____
Notary Public

EXHIBIT "4"

# TOTE
**Maritime**

**BILL OF LADING**

**TOTE Maritime Puerto Rico**

| | | |
|---|---|---|
| SHIPPER/EXPORTER (COMPLETE NAME, ADDRESS & ZIP CODE):   REF #: 728516<br>AQUA GULF TRANSPORT INC                728516, JV3320<br>1301 W NEWPORT CENTER DR<br>DEERFIELD BEACH FL 33442<br>UNITED STATES | SCAC:<br>TMGT | BILL OF LADING NO.:<br>SSL000646305 | SAIL DATE:<br>22-Mar-19 | EST. ARRIVAL DATE:<br>25-Mar-19 |

**BOOKING NO.:** SSL000646305     **TAX BOND NO.:**

**FORWARDER REF #:**     **TAX STATUS:** NOT RELEASED     **LOT NO.:** 668713

**CONSIGNEE (COMPLETE NAME, ADDRESS, AND ZIP CODE):**   REF #:
PLAZA PROVISION CO
CARR. 165 CORNER 28
GUAYNABO PR 00965
PUERTO RICO

**FORWARDING AGENT:  FMC NO.:**     **CHB LIC NO.:**

**NOTIFY PARTY (COMPLETE NAME, PHONE, FAX & EMAIL):**   REF #:
OSCAR VARGAS
PLAZA PROVISION CO
CARR. 165 CORNER 28
GUAYNABO PR 00965
PUERTO RICO

**Phone: +1 787-781-2070**     **Fax: +1 787-781-9750**

**FREIGHT PAYABLE BY:**
AQUA GULF TRANSPORT INC
1301 W NEWPORT CENTER DR
DEERFIELD BEACH FL 33442
UNITED STATES

**CITY, STATE, & COUNTRY OF ORIGIN:** Jacksonville, United States

| PRE-CARRIAGE BY: | PLACE OF RECEIPT:<br>Jacksonville | TYPE OF MOVE:<br>PORT TO PORT | ALSO NOTIFY (NAME, PHONE, FAX & EMAIL): |
|---|---|---|---|
| VESSEL: ISLA BELLA | PORT OF LOADING:<br>JACKSONVILLE | PORT OF DISCHARGE:<br>SAN JUAN | |
| VOYAGE:<br>5172S   FLAG:<br>UNITED STATES | | | TEL:     FAX: |
| VESSEL:<br>VOYAGE:   FLAG: | PORT OF LOADING: | PORT OF DISCHARGE: | DESTINATION:<br>San Juan   PREPAID/COLLECT:<br>Prepaid |

**PARTICULARS FURNISHED BY SHIPPER. CARRIER HAS NOT VERIFIED CONTENTS OR WEIGHT.**

| MARKS & NOS.<br>CONTAINER/SEAL NO. | NO. OF PKGS | HZ | DESCRIPTION OF DOCUMENTS AND GOODS | GROSS WEIGHT<br>LBS/KGS | MEASUREMENT<br>CFT/CM |
|---|---|---|---|---|---|
| Ctnr. No   Seal<br>SEGU9028923  7773249 | 773 PCE<br>2832 PCE | | Type<br>40RF   34F<br>LUNCHABLES<br>FINISHED GOODS (RE)<br>HAMS AND CUTS THEREOF  OF SWINE  NESOI<br>PREPARED OR PRESERVED | 3014.7 LB<br>11044.8 LB | |
| | 1452 PCE<br>15 PCE | | MAINTAIN TEMP AT 34 DEG FH<br>BACON<br>SAUSAGES AND SIMILAR PRODUCTS  OF MEAT<br>OTHER THAN POULTRY | 5662.8 LB<br>58.5 LB | |

ITN: X20190322981717

Express Bill of Lading

THESE COMMODITIES LICENSED BY U.S. FOR ULTIMATE DESTINATION. DIVERSION CONTRARY TO U.S. LAW PROHIBITED.

**SHIPPER'S LOAD AND COUNT**

| RECEIVED FOR SHIPMENT DATE: | LADEN ON BOARD DATE: 22-Mar-19 | NO. OF ORIGINAL BL'S:  0  (ZERO) |
|---|---|---|

| TARIFF: | TLI NO.: | CHARGE TYPE: | QTY: | RATE BASIS: | RATE: | PREPAID CHARGES: | COLLECT CHARGES: | TOTAL CHARGES: |
|---|---|---|---|---|---|---|---|---|

**GRAND TOTAL:**

Carrier's $500 limitation of liability per container shall apply, unless Carrier's tariff provides for Shipper's Interest cargo insurance with limits specified in Clauses 24 and 25 on the reverse side or Shipper selects Option (A) or (B) below.

A. Insurance Coverage -- See Clause 24 on the reverse side and applicable tariff to determine whether Shipper's cargo can be insured. If cargo can be insured, Shipper requests Shipper's Interest cargo insurance at the applicable rates charged by Carrier.
( ) Yes (X) No   Insured Value $_____

B. Ad Valorem -- See Clause 25 on the reverse side. If Shipper declares a value in this space provided and pays Carrier's Ad Valorem rate for Shipper's cargo, Carrier's $500 limitation per container will not apply.

Declared Value $_____

Received the goods or packages said to contain good s herein mentioned in apparent good order and condition, unless otherwise indicated, to be shipped as herein provided. Carrier has not inspected contents of said sealed packages.

The receipt, custody, carriage, delivery and transshipment of the goods are subject to the terms appearing on the face and back hereof, and Carrier's tariffs on file with the Surface Transportation Board and/or the Federal Maritime Commission, Washington, D.C.

In witness whereof, the Carrier or its agent has signed  0  original bill(s) of lading, all of the same tenor and date, one of which being accomplished, the others to stand void.

Signed on behalf of the Carrier, TOTE Maritime Puerto Rico, LLC

By:_____, Carrier

TOTE Maritime Puerto Rico, LLC, Bill of Lading Terms and Conditions are available for inspection at the office of Carrier and its agents and at www.totemaritime.com. Contact us at 1-877-775-7447 for answers to questions or further information. Carriage of Shipper's cargo is subject to all such Terms and Conditions, which are incorporated herein by reference.

EXHIBIT "5"

| Policy No. | SWORN STATEMENT IN | Exp. Date |
|---|---|---|
| **09-580-000592599-2** | **PROOF OF LOSS** | **02/27/2020** |

## UNIVERSAL INSURANCE COMPANY

BY YOUR POLICY OF INSURANCE ABOVE DESCRIBED, YOU INSURED

**Assured: PLAZA PROVISION COMPANY &/OR SEE EXTENDED NAME**

**Agency: CHRISTIANSEN INSURANCE**

Subject to the terms and conditions thereof, the following property located at **Road No. 1, Km. 27.9, Barrio Cañas in Caguas, Puerto Rico.** I (we) state that in addition to the sum insured by said policy on said property there was no other insurance made thereon except as follows:

Amount  **$2,000,000.00**                    UNIVERSAL INSURANCE CO. POLICY: 09-580-000592599-2

**Cargo Damages** occurred between Union City, Georgia and San Juan, Puerto Rico through Jacksonville, Florida between March 22th and March 29th 2019. Which to the best of our knowledge and belief was possibly caused by low refrigerant levels in the unit that caused that the cargo suffered temperature's variations.

**DETAILED DESCRIPTION OF LOSS:  container SEGU9028923 loaded with Oscar Mayer lunchables ham and turkey boxes**

The actual cash value of the property lost and or damaged, the actual amount of loss and/or damage as shown by the statement of loss contained on back hereof, the total insurance at time of said loss and/or damage and the amount claimed under the said policy are as follows:

| Cash Value | Whole Loss And/or Damage | Whole Insurance | Amount Named in this Policy | Amount claim under this Policy |
|---|---|---|---|---|
| | **$103,909.61** | **$2,000,000.00** | **$2,000,000.00** | **$78,909.61** |

(I)  We  hereby make claim upon the Universal Insurance Company in the sum of **$78,909.61** said loss and/or damage after **$25,000.00** deductible per occurrence. In consideration of whatever payment may be made hereunder **(I) We**  hereby subrogate to the said Company all _____ its _____ right, (s) title and interest in and to the property for which claim is being made hereunder to the extent of such payment and **(I) We** (I) further agree that should the said property be recovered at any time to immediately notify the said Company and to refund to said Company in full any amount it may have advanced to me (us) on account of the said loss it being understood that the said Company is to pay the cost of restoring the said property to its condition at the time of loss if recovered in a damaged condition.

We (I) further state that at the time of said loss belong exclusively to **Plaza Provision Company, Inc.** and no other person or persons had any interest therein and that there was no encumbrance of any kind whatsoever on said property. The said loss did not originate by any act, design or a procurement, nor in consequence or any fraud or a evil practice done or suffered by or on part of deponent or of anyone having any interest in the property insured, or in the said Policy, that nothing has been done by or with deponent's privities or consent to violate the conditions of the said Policy or render it void; and that no articles are mentioned herein but such as were lost, damage or destroyed, and belonging to, and in the possession of the said insured at the time of the said  insured at the tie of the said loss; that no property saved has been in any manner concealed and that no attempt to deceive the said Company as to the extent of said loss or otherwise, has in any manner been made. Any other information that may be required will be furnished on call and considered a portion of these proofs. It is further expressly understood and agreed, that the furnishing of this form of proof of loss to **Universal Insurance Company** or the preparation and/or acceptance of proof of loss by any adjuster or agent of the Company shall not be construed to be a waiver of any of the conditions of the policy or of the rights of the Company under the policy or otherwise.

Approved:

*Sign* _____          Claim #2082320

PERSONALLY APPEARED, _____

signer _____ of the foregoing statement, who made solemn oath to the truth of same, and that no material fact is withheld that the said Company should be advised of. WITNESS my hand and official seal this _____ day of _____ of 2016

_____

Notary Public